UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

FLOYD JENNINGS,

    Plaintiff,

v.       Case No. 2:05-cv-112
    HON. GORDON J. QUIST

ROBERT WICKSTROM, et al.,

    Defendants.
_____/

## REPORT AND RECOMMENDATION

Plaintiff Floyd Jennings, an inmate currently confined at the Alger Maximum Correctional Facility (LMF), filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against Defendants Robert Wickstrom, Lynne Phillipson and David Bergh. Plaintiff's complaint alleges that he filed grievances against defendant Wickstrom for using racial slurs. In retaliation for the grievance filings, defendant Wickstrom allegedly denied plaintiff breakfast and lunch trays on December 18, 24, 25, and 30, 2004. Defendant Phillips was the Acting Unit Manager. Plaintiff alleges that although he made defendant Phillips aware of what defendant Wickstrom was doing, she took no corrective action. Defendant Bergh approved plaintiff for indefinite upper slot and container restrictions upon plaintiff's arrival at LMF. Plaintiff alleges that he never received any notice or rules regarding the restrictions. Plaintiff alleges that he is being denied food, cleaning supplies, laundry services, cosmetic items, medications and toothpaste. Plaintiff has alleged that he never received notice of what he is allowed to keep under the container restriction. Plaintiff asserts that, because of the upper food slot restriction, he is refused services if he is not in a certain position when

staff comes to his cell. Plaintiff claims that he has received major misconduct tickets for not knowing the correct position when staff is at his cell.

In his supplemental complaint, plaintiff alleged that defendant Wickstrom denied plaintiff a breakfast tray on March 22, 2005 and a lunch tray on May 2, 2005. Between April 12, 2005, and May 11, 2005, defendant Wickstrom allegedly shut plaintiff's water off between 6:00 a.m. until the next shift change at 2:00 p.m. Plaintiff alleges that defendant Wickstrom took these actions solely in retaliation for plaintiff's grievance filings. Plaintiff alleges that on May 2, 2005, defendant Wickstrom told plaintiff that if he stopped writing grievances plaintiff would get his meals. Plaintiff alleges that as a result he stopped writing grievances. Plaintiff has asserted a retaliation claim and a due process claim against defendants.

Presently before the Court is defendants' Motion for Summary Judgment, pursuant to Fed. R. Civ. P. 56. Plaintiff has filed a response and the matter is ready for decision. Summary judgment is appropriate only if the moving party establishes that there is no genuine issue of material fact for trial and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). If the movant carries the burden of showing there is an absence of evidence to support a claim or defense, then the party opposing the motion must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. *Id.* at 324-25. The nonmoving party cannot rest on its pleadings but must present "specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)). The evidence must be viewed in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Thus, any direct evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true. *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004) (*citing Adams v. Metiva*, 31 F.3d 375,

382 (6th Cir. 1994)). However, a mere scintilla of evidence in support of the nonmovant's position will be insufficient. *Anderson*, 477 U.S. at 251-52. Ultimately, the court must determine whether there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252. *See also Leahy v. Trans Jones, Inc.*, 996 F.2d 136, 139 (6th Cir. 1993) (single affidavit, in presence of other evidence to the contrary, failed to present genuine issue of fact); *cf. Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1448 (6th Cir. 1993) (single affidavit concerning state of mind created factual issue).

Plaintiff has asserted that defendant Wickstom retaliated against him for filing grievances by refusing to provide plaintiff a meal tray on certain days. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 *1037 (6th Cir.1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, in least in part, by the protected conduct. *Thaddeus-X*, 175 F.3d at 394. Moreover, Plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Defendant Wickstom explained that plaintiff did not receive food trays when he was sleeping or when he refused to comply with orders required to receive his food tray, because he was on upper slot restriction. Plaintiff was directed to put his hands on the back wall and kneel on his bunk, which is the routine when a prisoner is on upper slot restriction. On December 26, 2004, defendant Wickstrom wrote plaintiff a misconduct ticket for disobeying a direct order and for

insolence when plaintiff refused to place his hands on the back wall and kneel on his bunk so that defendant Wickstrom could pick up plaintiff's food tray. Plaintiff was found guilty of the charges. On March 22, 2005, defendant Wickstrom issued plaintiff a misconduct ticket for threatening behavior for stating "I will throw shit in one of you officer's faces! When I say something I will do it!" Plaintiff was found guilty of the charge. On April 12, 2005, defendant wrote a misconduct ticket on plaintiff for disobeying a direct order when plaintiff refused to go to the back of cell while defendant was trying to close the upper cell door slot. Plaintiff was found guilty of the charge. On May 5, 2005, plaintiff was written a misconduct ticket for disobeying a direct order and for insolence for refusing the order to place his hands on the back wall and kneel on his bed, so that defendant could pick up plaintiff's food tray. Plaintiff was found guilty of the charges. On May 6, 2005, plaintiff was given a misconduct ticket for assault and battery on another officer and for disobeying a direct order. Plaintiff was found guilty of both misconduct tickets. There exists no evidence which could support plaintiff's claim of retaliatory action by defendant Wickstrom. Plaintiff failed to receive food trays because he refused to comply with orders necessary for him to obtain the trays. Moreover, defendant Wickstrom has shown that he was not working or was not assigned to plaintiff's unit on some of days that plaintiff alleges that defendant Wickstrom took adverse action against him.

Plaintiff has explained that his main claim is that he has been denied due process when he was placed on an upper slot restriction, a container restriction and a water restriction. Plaintiff's complaint alleges that defendants' actions violated his Fourteenth Amendment right to procedural due process. In the opinion of the undersigned, plaintiff due process claim is without merit on the basis of *Sandin v. Conner*, 515 U.S. 472, 115 S. Ct. 2293 (1995). In *Sandin*, the plaintiff alleged that prison officials deprived him of procedural due process by refusing to allow him

to present witnesses during a disciplinary hearing and then sentencing him to segregation for misconduct. *Sandin*, 515 U.S. at 474, 115 S. Ct. at 2294. In reversing the Ninth Circuit's decision that the prisoner had a liberty interest in remaining free of disciplinary segregation, the Supreme Court abandoned the search for mandatory language in prisoner regulations as previously called for under *Hewitt v. Helms*, 459 U.S. 460 (1983), and ruled instead that it was time to return to the due process principles which were established in *Wolff v. McDonnell*, 418 U.S. 539 (1974), and *Meachum v. Fano*, 427 U.S. 215 (1976). *Sandin*, 515 U.S. at 483, 115 S. Ct. at 2300 (internal citations omitted).

In *Sandin*, the Supreme Court noted that in some cases, a restraint might be so extreme as to implicate rights arising directly from the Due Process Clause itself. *Sandin*, 515 U.S. at 483-484, 115 S. Ct. at 2300 (internal citations omitted). In addition, the Court recognized that States may create liberty interests protected by the Due Process Clause where the freedom from restraint imposed "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484, 115 S. Ct. at 2300. However, such restraints are rare and do not include, for example, transfer into solitary confinement. *Sandin*, 515 U.S. at 486, 115 S. Ct. at 2301. Nor does placement in administrative segregation normally constitute such a hardship. *Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998); *Mackey v. Dyke*, 111 F.3d 460, 463 (6th Cir.), *cert. denied*, 522 U.S. 848 (1997); *Rimmer-Bey v. Brown*, 62 F.3d 789 (6th Cir. 1995). In addition, plaintiff has no right to prison employment or to early release on parole. *Greenholtz v. Inmates, Nebraska Penal and Correctional Complex*, 442 U.S. 1, 7 (1979); *Board of Pardons v. Allen*, 482 U.S. 369 (1987); *Sweeton v. Brown*, 27 F.3d 1162, 1164-65 (6th Cir. 1994), *cert. denied*, 513 U.S. 1158 (1995); *Newsom v. Norris*, 888 F.2d 371, 374 (6th Cir.1989). Moreover, there is no right under federal law allowing a prisoner to prevent a transfer to another facility or giving him any

choice concerning the facility where he will be incarcerated. *Meachum*, 427 U.S. at 223-29[1]; *Olim v. Wakinekona*, 461 U.S. 238 (1983).

A plaintiff seeking to allege a procedural due process violation based on a state created liberty interest must not only show it is derived from mandatory language in a regulation, but also that it imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484, 115 S. Ct. at 2300; *Rimmer-Bey*, 62 F.3d at 790-791. Pursuant to *Sandin*, "a liberty interest determination is to be made based on whether it will affect the overall duration of the inmate's sentence, and there is no evidence here that the segregation will impact Plaintiff's sentence." *Jones*, 155 F.3d at 812. The Sixth Circuit has determined that a prisoner's placement in administrative segregation for over a year is not an atypical or significant hardship as to create a liberty interest in due process. *Mackey v. Dyke*, 111 F.3d 460, 461-63 (6th Cir.), *cert. denied*, 522 U.S. 848 (1997). Plaintiff was transferred from administrative segregation at the Southern Michigan Correctional Facility to administrative segregation at Alger Maximum Correctional Facility (LMF) on November 23, 2004. Plaintiff had been placed on upper slot restriction and container restriction at Southern Michigan Correctional Facility on November 15, 2004. Plaintiff had used containers filled with urine to assault staff through his upper cell door slot. It was determined that the restrictions should remain in effect while plaintiff was housed as an administrative segregation prisoner. The restrictions were continued as appropriate when plaintiff transferred to LMF. Plaintiff is still able to receive medication by health care staff, but is not allowed to possess containers that he would be able to use to hold, stock or store substances that he

---

[1]In *Meachum v. Fano*, 427 U.S. 215, 223-229 (1975), the Court held that transfers between prisons of different severity, such as between a medium security prison and a maximum security prison, did not deprive the prisoner of liberty within the meaning of the Due Process Clause.

could use to assault staff. Plaintiff was placed on these restrictions because of his behavior. Plaintiff cannot blame defendants because his behavior warranted the restrictions. Defendant Bergh has stated that all restrictions are reviewed weekly to determine if a prisoner's behavior warrants rescinding a restriction. Further, defendant Bergh has explained that plaintiff has incurred over 250 major misconduct tickets during his incarceration and has a history of assaultive behavior and threatening staff. Plaintiff has assaulted staff on ten occasions. He has threatened staff thirty separate times, has possessed contraband and a dangerous weapon, and has two felony convictions for attempted assault of a prison employee. Further, plaintiff was placed on a water restriction because he flooded his cell by repeatedly flushing his toilet. Defendant Wickstom stated that when a prisoner is on a water restriction defendant Wickstrom makes sure that the water is shut off in the prisoner's cell at the start of his shift and will turn the water back on approximately every two hours so that the prisoner can get a drink and flush his toilet. Plaintiff received these restrictions because of his decision to behave inappropriately. Under these circumstances, plaintiff's restrictions were not atypical and significant hardships in the prison setting. In the opinion of the undersigned, because plaintiff in this case fails to allege facts constituting an "atypical and significant hardship," plaintiff's claim that he was denied procedural due process is without merit.

Plaintiff has named defendant Phillipson as a defendant because of her supervisory status. Plaintiff asserts that he complained to defendant Phillipson about defendant Wickstrom's behavior and that defendant Phillipson did nothing. Defendant Phillipson stated that plaintiff sent kites to her about defendant Wickstrom. As a result, defendant Phillipson spoke to both defendant Wickstrom and plaintiff. Defendant Wickstrom denied plaintiff's charges. Defendant Phillipson stated that when she spoke to plaintiff he became verbally abusive toward her when discussing the allegations. Defendant Phillipson determined that defendant Wickstrom was performing his job

according to standards and no corrective action was necessary. Plaintiff has not established that defendant Phillipson violated his rights or took any unreasonable actions.

Government officials, performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999); *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997); *Noble v. Schmitt*, 87 F.3d 157, 160 (6th Cir. 1996); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). An "objective reasonableness" test is used to determine whether the official could reasonably have believed his conduct was lawful. *Dietrich*, 167 F.3d at 1012; *Anderson v. Creighton*, 483 U.S. 635, 641 (1987).

When determining whether a right is clearly established, this court must look first to decisions of the United States Supreme Court, then to decisions of the Sixth Circuit and to other courts within this Circuit, and finally to decisions of other circuits. *Dietrich*, 167 F.3d at 1012. An official action is not necessarily protected by qualified immunity merely because the very action in question has not previously been held to be unlawful. Rather, in light of pre-existing law, the unlawfulness of the official's conduct must be apparent. *Dietrich*, 167 F.3d at 1012; *Wegener v. City of Covington*, 933 F.2d 390, 392 (6th Cir. 1991).

When making a qualified immunity analysis, the facts must be interpreted in the light most favorable to the plaintiff. Part of the analysis is to determine whether there are any genuinely disputed questions of material fact. *Kain v. Nesbitt*, 156 F.3d 669, 672 (6th Cir. 1998). Where there is a genuinely disputed question of fact, it is for the trier of fact to resolve, not the judge. "This would be true notwithstanding that the trial judge found the [defendant] officer to be more credible than the plaintiff because it is not for the court to make credibility determinations at this stage of the proceeding." *Id.*

The operation of the qualified immunity standard depends substantially upon the level of generality at which the relevant legal rule is to be identified.

> The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of the pre-existing law the unlawfulness must be apparent.

*Anderson*, 483 U.S. at 639-40. *See also Durham v. Nu'Man*, 97 F.3d 862, 866 (6th Cir. 1996), *cert. denied*, 520 U.S. 1157 (1997).

The Sixth Circuit has observed:

> A right is not considered clearly established unless it has been authoritatively decided by the United States Supreme Court, the Court of Appeals, or the highest court of the state in which the alleged constitutional violation occurred.

*Durham*, 97 F.3d at 866 (citing *Robinson v. Bibb*, 840 F.2d 349, 351 (6th Cir. 1988)).

Thus, qualified immunity is not triggered only where the very action in question was previously held unlawful. *Anderson*, 483 U.S. at 639-40. Rather, the test is whether the contours of the right were sufficiently clear that a reasonable official would understand that what he is doing violated plaintiff's federal rights. *Id.*

Furthermore, a defendant need not actively participate in unlawful conduct in order to be liable under Section 1983. Rather, a defendant may be liable where he has a duty to protect a plaintiff and fails to comply with this duty. *Durham*, 97 F.3d at 866-868 (holding that a nurse and a security guard at a state hospital may be liable under Section 1983 where they do not take action to prevent a patient from being beaten). *See also McHenry v. Chadwick*, 896 F.2d 184 (6th Cir. 1990)(a correctional officer who observes an unlawful beating may be liable under Section 1983 even though he did not actively participate in the beating), and *Bruner v. Dunaway*, 684 F.2d 422

(6th Cir. 1982), *cert. denied sub nom*, *Bates v. Bruner*, 459 U.S. 1171 (1983)(police officers who stood by and observed an unlawful beating by fellow officers could be held liable under Section 1983).

When faced with a qualified immunity defense, the court must first determine whether or not the plaintiff has stated a claim upon which relief can be granted. *Siegert v. Gilley*, 500 U.S. 226, 232 (1991); *Turner*, 119 F.3d at 429. If the court answers that question in the affirmative, the court goes on to determine whether or not the right allegedly violated was clearly established. *Id*. These are both purely legal questions. The immunity issue should not be resolved if there are factual disputes on which the issue of immunity turns such that it cannot be determined before trial whether the defendants' conduct violated clearly established rights. *Hall v. Shipley*, 932 F.2d 1147, 1154 (6th Cir. 1991). Plaintiff has not established facts which could show a violation of his constitutional rights. Under the circumstances in this case, defendants actions were reasonable. In the opinion of the undersigned, defendants are entitled to qualified immunity.

Plaintiff has moved for injunctive relief. Plaintiff has requested that the court order prison staff to stop taking his store bought items, including hygiene items. Plaintiff requests a transfer to the Standish Maximum Correctional Facility and an "order against defendants for continuing and knowingly violating [plaintiff's] constitutional rights." The issuance of preliminary injunctive relief is committed to the discretion of the district court. *Planned Parenthood Association v. City of Cincinnati*, 822 F.2d 1390, 1393 (6th Cir. 1987). In exercising that discretion, the court must consider and balance four factors:

> 1. Whether the movant has shown a strong or substantial likelihood or probability of success on the merits.
>
> 2. Whether the movant has shown irreparable injury.

>    3. Whether the preliminary injunction could harm third parties.
>
>    4. Whether the public interest would be served by issuing a preliminary injunction.

*Washington v. Reno*, 35 F.3d 1093 (6th Cir. 1994). These factors are not prerequisites to the grant or denial of injunctive relief, but factors that must be carefully balanced by the district court in exercising its equitable powers. *Id.*

Moreover, where a prison inmate seeks an order enjoining state prison officials, this Court is required to proceed with the utmost care and must recognize the unique nature of the prison setting. *See Kendrick v. Bland*, 740 F.2d 432 at 438, n.3, (6th Cir. 1984). *See also Harris v. Wilters*, 596 F.2d 678 (5th Cir. 1979). It has also been remarked that a party seeking injunctive relief bears a heavy burden of establishing that the extraordinary and drastic remedy sought is appropriate under the circumstances. *See Checker Motors Corp. v. Chrysler Corp.*, 405 F.2d 319 (2d Cir. 1969), *cert. denied*, 394 U.S. 999 (1969). *See also O'Lone v. Estate of Shabazz*, 482 U.S. 342 (1986).

Plaintiff's "initial burden" in demonstrating entitlement to preliminary injunctive relief is a showing of a strong or substantial likelihood of success on the merits of his Section 1983 action. *NAACP v. City of Mansfield, Ohio*, 866 F.2d 162, 167 (6th Cir. 1989). In the opinion of the undersigned, plaintiff fails to establish a substantial likelihood of success with respect to plaintiff's claim that the defendants have violated his federal rights. Furthermore, plaintiff has failed to establish that he will suffer irreparable harm absent injunctive relief.

Finally, in the context of a motion impacting on matters of prison administration, the interests of identifiable third parties and the public at large weigh against the granting of an injunction. Any interference by the federal courts in the administration of state prison matters is necessarily disruptive. The public welfare therefore militates against the issuance of extraordinary

relief in the prison context, absent a sufficient showing of a violation of constitutional rights. *See Glover v. Johnson*, 855 F.2d 277, 286-87 (6th Cir. 1988). That showing has not been made here.

Accordingly, it is recommended that defendants' Motion for Summary Judgment (Docket #26) be granted and that this case be dismissed in its entirety. It is further recommended that plaintiff's motions for injunctive relief (Docket ## 35 and 48) be denied.

Further, if the court adopts this recommendation the court should decide that an appeal of this action would not be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the court grants defendants' motion for summary judgment, the court can discern no good-faith basis for an appeal. It is recommended that should the plaintiff appeal this decision, the court assess the $255 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he should be required to pay the $255 appellate filing fee in one lump sum.

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within ten (10) days of receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b). Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985).

/s/ Timothy P. Greeley
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE

Dated: March 31, 2006